UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIKEB SADDOZAI, | Case No. 18-cv-03972 BLF (PR) |
| Plaintiff, | |
| | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; DENYING MOTION TO ADD DEFENDANTS AS MOOT** |
| v. | |
| TERRY ARQUEZA, successor to A. ARQUEZA, et al., | |
| Defendant. | |
| | (Docket Nos. 71, 97) |

Plaintiff, a California inmate, filed the instant *pro se* civil rights complaint under 42 U.S.C. § 1983.  The second amended complaint ("SAC") is the operative complaint in this action.  Dkt. No. 23.  The sole defendant in this action, deceased Officer A. Arqueza, was substituted by his widow, Mrs. Terry Arqueza, as his successor.  Dkt. No. 52.  The Court ordered the matter to proceed on the cognizable claims against Defendant Arqueza.  Id. at 2.  Defendant filed a motion for summary judgment, supported by declarations and exhibits, asserting that Plaintiff has failed to establish the essential elements for any of his claims.  Dkt. No. 71.[1]  Plaintiff did not file opposition although granted multiple

---

[1] In support of the motion, Defendant submits the declaration of counsel Sarah H. Trela, Deputy County Attorney, Dkt. No. 71-1, along with exhibits, Dkt. No. 71-2, and the declaration of Sgt. Scott Mueller, Dkt. No. 71-3, along with exhibits, Dkt. Nos. 71-4, 71-5,

United States District Court
Northern District of California

extensions of time to do so.  Dkt. Nos. 83, 90, 103.  However, the SAC is verified and therefore may be treated as an opposing affidavit.[2]  The Court deemed this matter submitted as of May 5, 2023, the final deadline for Plaintiff to file an opposition.  Dkt. No. 113 at 4.

For the reasons discussed below, Defendant's summary judgment motion is **GRANTED**.

# DISCUSSION

## I.   <u>Statement of Facts</u>[3]

The underlying events of this action took place at San Mateo County's Maguire Jail Facility ("MCF") during April and May 2018.

Plaintiff was in the custody of the San Mateo County Sheriff's Office from February 12, 2016 through July 30, 2018.  Trela Decl. ¶ 2, Ex. A; Dkt. No. 71-2 at 3 [Plaintiff's Housing Summary].  Plaintiff was classified as requiring protective custody for his own safety and the safety of the facility.  *Id.* at ¶ 3, Ex. B; Dkt. No. 71-2 at 7-9 [Plaintiff's Classification Record].  His criminal jury trial for multiple felony charges took

71-6.  Defendant was granted leave to file redacted copies and unredacted versions under seal of the following: Defendant's summary judgment motion, copies of Plaintiff's health services request forms, the Use of Force Report for the underlying incident, and relevant footage from MCF's surveillance videos.  Dkt. No. 69.  Exhibit B to Sgt. Mueller's declaration is a copy of excerpts from the relevant video security footage captured by MCF closed circuit surveillance cameras around the time of the April 30, 2018 incident.  Mueller Decl. ¶ 17, Dkt. Nos. 70, 71, 83.

[2] A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge); *see also Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998) (treating allegations in prisoner's verified amended complaint as opposing affidavit).

[3] Because no opposition has been filed, the Court accepts Defendant's statement of facts, unless indicated that facts are in dispute with Plaintiff's verified complaint.

United States District Court
Northern District of California

place in May and June 2017. *Id.* at ¶ 4, Ex. C; Dkt. No. 71-2 at 11-16 [Minute Order:

Trial]. On June 14, 2017, the jury returned a guilty verdict on all charges. *Id.* Plaintiff

was sentenced on July 20, 2018. *Id.* at ¶ 5, Ex. D; Dkt. No. 71-2 at 18-22 [Minute Order:

Sentencing]. He was later transferred to the custody of the CDCR. *Id.* at ¶ 7, Ex. E; Dkt.

No. 71-2 at 25 [CDCR Locator: Saddozai].

Defendant submits the declaration of Sgt. Mueller. Dkt. No. 71-3. Sgt. Mueller

was hired by the County of San Mateo as a Deputy Sheriff in August 2008. Mueller Decl.

¶ 2. In April and May 2018, Sgt. Mueller worked as the Security Sergeant at MCF, and

was responsible for overseeing all security issues within MCF as well as managing

Correctional Officer staffing assignments for MCF. *Id.*

### A.   Altercation between Plaintiff and Officer Arqueza

On April 30, 2018, Officer Arqueza was working on Unit 3 East at MCF, which

was his usual assignment at the time. Mueller Decl. ¶ 6, Dkt. No. 71-3. At MCF, Unit 3

East and Unit 3 West are administrative segregation units, used for inmates who cannot be

safely housed in the general population. *Id.* at ¶ 3. Plaintiff was assigned to MCF Unit 3

East, Cell 20. Trela Decl., Ex. A; Dkt. No. 71-2 at 3. Plaintiff had his own cell, which had

a vertical window on the upper portion of the door through which the correctional officers

could monitor inmates. Mueller Decl. ¶ 3, Ex. B, Vol. 1; Trela Decl. ¶ 13, Ex. K at 1

("[T]here is a small window for staff to ensure the safety of inmates from hurting

themselves or other inmates inside of the cell in accordance with the law, guidelines, and

policy/procedures."); Dkt. No. 71-2 at 40.

According to Plaintiff's allegations in the SAC, on April 30, 2018, he was

"repeatedly beaten and battered… in retaliation for [Plaintiff] requesting a jail grievance

form" by Officer Arqueza. Dkt. No. 23 at 4, ¶ 1. Plaintiff states that Officer Arqueza

"assaulted and threw [Plaintiff] onto the ground, with assistance from his partner placed

his body weight and knees onto [Plaintiff]'s head, back, legs, and arms while Plaintiff

[Plaintiff] in handcuffs behind his back as punishment to inflict additional pain, cuts,

1   bruising, and numbness due to handcuffs cutting off blood circulation, resulting from being

2   intentionally applied extremely tight beyond reasonableness." *Id.* at ¶ 2.  Plaintiff states

3   that he "did not resist, nor pose a threat, and compliant" to Officer Arqueza and his

4   partner's commands "prior and after being beaten[ed] and battered proved no need shown

5   for abusive restraints." *Id.* at ¶ 3.

6        The following account is taken from Officer Arqueza's incident report and the

7   video footage submitted by Defendant under seal.  Trela Decl., Ex. F; Mueller Decl., Ex.

8   B.[4]  On April 30, at some point prior to 7:30 p.m., Plaintiff placed brown paper over the

9   lower portion of his cell window to obscure the view in or out.  Mueller Decl., Ex. B, Vol.

10  1 at 19:54:54 (first floor, cell door marked "3E20").  At about 7:54 p.m., Plaintiff replaced

11  this paper with an even larger paper that obscured about two-thirds of the window.  *Id.*  In

12  his response to Defendant's request for admissions, Plaintiff denies that he placed anything

13  in his cell window.  Trela Decl. ¶ 21, Ex. S [Plaintiff's RFA Responses], No. 1; Dkt. No.

14  71-2 at 61.

15       At about 8:02 p.m., Officer Arqueza approached Plaintiff's cell and leaned his head

16  against the window to speak with Plaintiff through the closed door.  Mueller Decl., Ex. B,

17  Vol. 1 at 20:02:13-17.  Officer Arqueza stated in his report that he approached the cell and

18  asked Plaintiff if he wanted his indoor recreation time, and Plaintiff said yes.  Trela Decl. ¶

19  7, Ex. F [Incident Report] at 2; Dkt. No. 71-2 at 29.  Officer Arqueza could not see inside

20  the cell because the paper Plaintiff placed over the window extended above Officer

21  Arqueza's head.  Mueller Decl., Ex. B, Vol. 1 at 20:02:17.  Plaintiff is approximately 5'

22  10" tall.  Trela Decl. ¶ 21, Ex. S, No. 2; Dkt. No. 71-2 at 61.  According to the video,

23  Officer Arqueza appears to be significantly shorter.  Mueller Decl., Ex. B, Vol. 1 at

24  20:02:17.  Officer Arqueza then went upstairs in the unit to release a different inmate to his

25  _____

26  [4] *See infra* at 1-2, fn. 1.  Exhibit B contains seven "Volumes" of footage from April 30,
    2018.  Mueller Decl., Ex. B; Dkt. No. 71-5.  Volumes 1-3 contain footage from Unit 3
27  East, Volumes 4-6 contain footage from areas between Unit 3 East and the Intake Unit,
    and Volume 7 contains footage from the Intake Unit.  *Id.*

28                                          4

United States District Court
Northern District of California

outdoor recreation time.  *Id.* at 20:02:18; Vol. 2 at 20:02:18.

At approximately 8:03 p.m., Officer Arqueza returned to Plaintiff's cell and unlocked it, leaving the door slightly ajar but not opening the door wide enough to see into the cell.  Mueller Decl., Ex. B, Vol. 1 at 20:03:11.  Officer Arqueza turned to walk back toward the guard station but paused, leaned back toward Plaintiff's door, apparently to listen or say something, then returned to the guard station.  *Id.* at 20:03:17.  Less than 20 seconds after his cell door was unlocked, Plaintiff came out of his cell, leaving the door wide open, and walked quickly toward the guard station.  *Id.* at 20:03:27.

The video shows Plaintiff quickly approaching the guard station, appearing to speak and point at Officer Arqueza while gesturing backwards toward his cell.  Mueller Decl., Ex. B, Vol 1 at 20:03:30, Vol. 2 at 20:03:30; Trela Decl. ¶ 7, Ex. F at 2, Dkt. No. 71-2 at 29.  Plaintiff was upset that Officer Arqueza opened the door while Plaintiff was using the toilet.  Trela Decl. ¶ 11, Ex. I [May 20 Grievance]; Dkt. No. 71-2 at 36 (claiming that Officer Arqueza "deliberately violated Saddozai's right to privacy while Saddozai was occupied utilizing the toilet facilities within the cell.")  Officer Arqueza reported that Plaintiff appeared angry and was breathing heavily.  Trela Decl., Ex. F, Dkt. No. 71-2 at 29.  The video shows Plaintiff speaking and gesturing backwards towards his cell. Mueller Decl., Ex. B, Vol. 2 at 20:03:30.  Officer Arqueza reported that Plaintiff was shouting, "What the fuck are you doing" and "Fuck you, I was taking a shit," among other profanities.  Trela Decl., Ex. F, Dkt. No. 71-2 at 29.  Officer Arqueza reported responding to Plaintiff that he could not see him using the toilet because Plaintiff had covered his cell window.  *Id.*  Officer Arqueza walked over to Plaintiff and pointed towards Plaintiff's cell; as the two spoke, both repeatedly pointed or gestured back toward Plaintiff's cell.  Mueller Decl., Ex. B, Vol. 2 at 20:03:30.  Officer Arqueza further stated that as Plaintiff continued yelling profanities, he instructed Plaintiff to "lock down" because his recreation time was over.  Trela Decl. ¶ 7, Ex. F at 2, Dkt. No. 71-2 at 29.  According to the video, Plaintiff pointed at Officer Arqueza, took a small step backwards, then a step forward, leaning

5

aggressively toward Officer Arqueza.  Mueller Decl., Ex. B, Vol. 2 at 20:03:43.  Officer Arqueza stated that Plaintiff shouted, "Fuck that, I'm not locking down."  Trela Decl. ¶ 7, Ex. F, Dkt. No. 71-2 at 29.  Officer Arqueza immediately stepped back, put down a paper he was holding, and reached toward the radio on his shoulder.  Mueller Decl., Ex. B, Vol. 2 at 20:03:44.

Plaintiff turned and walked back across the unit towards his cell, followed by Officer Arqueza.  Mueller Decl., Ex. B, Vol. 1 at 20:03:47.  Officer Arqueza reported ordering Plaintiff to "cuff up," but Plaintiff shouted, "Fuck you."  Trela Decl. ¶ 7, Ex. F, Dkt. No. 71-2 at 29.  The video shows Officer Arqueza reaching out for Plaintiff's left arm, but Plaintiff turned, pulled his arm away, and aggressively leaned toward Officer Arqueza while clenching his fist.  Mueller Decl., Ex. B, Vol. 1 at 20:03:51.  Plaintiff appears larger and taller than Officer Arqueza, as the latter appears to be looking up at Plaintiff.  *Id.*

Officer Arqueza again grabbed at Plaintiff's left arm but caught his shirt instead; as Plaintiff tried to pull free, he pulled Officer Arqueza back toward the open cell.  *Id.* at 20:03:54.  By this time, Officer Rocha arrived and grabbed Plaintiff's right arm.  *Id.* Officer Arqueza stated that he grabbed Plaintiff's left wrist and used a "reverse rear wrist lock" in an attempt to gain control of Plaintiff.  Trela Decl. ¶ 7, Ex. F, Dkt. No. 71-2 at 29. Officer Arqueza also stated that Plaintiff continued to resist and was taken to the ground, chest first; Plaintiff continued to resist both of them.  *Id.*  The video shows that Plaintiff lowered his body as he tried to pull away from both officers, kneeling down as Officers Rocha and Arqueza gained control of his arms and lowered Plaintiff to the ground face down; Plaintiff appeared to be resisting all the while.  Mueller Decl., Ex. B, Vol. 1 at 20:03:57.  Plaintiff's hands were behind his back and the two officers knelt next to him. *Id.*  While on the ground, Plaintiff continued to resist both officer's efforts to secure him in handcuffs for about 20 seconds, twisting his back and raising his head as the officers attempted to fasten the handcuffs.  *Id.* at 20:04:21.  During this time, Officer Arqueza

United States District Court
Northern District of California

1   placed his knee on Plaintiff's back for approximately two seconds. *Id.* at 20:04:00. Once

2   he was handcuffed, Plaintiff stopped resisting; Officer Arqueza stood next to Plaintiff for

3   about a minute as he waited for additional help to arrive. *Id.* at 20:05:05. Officer Arqueza

4   was bending over at the waist to keep one or two hands on Plaintiff's upper back but not

5   applying any body weight to Plaintiff. *Id.*

6          About a minute after Plaintiff was secured, at approximately 8:05 p.m., Correctional

7   Officer Laperruque arrived and assisted Officer Rocha to lift Plaintiff to stand upright. *Id.*

8   at 20:05:13. Officers Laperruque and Rocha escorted Plaintiff out of the unit. *Id.* at

9   20:05:17; Trela Decl. ¶ 7, Ex. F, Dkt. No. 71-2 at 29. The video shows Plaintiff walking

10  normally out of the unit, with the two officers each holding one arm. *Id.*; Mueller Decl.,

11  Ex. B, Vol. 3 at 20:05:27.

12         According to Plaintiff, Officer Arqueza and his partner transferred Plaintiff

13  "barefooted into a holding tank out of the view of facility surveillance cameras, and

14  threatened [Plaintiff] with violent to cause serious physical injury." Dkt. No. 23 at 4, ¶ 4.

15  Plaintiff asserts that other officers were present and failed to intervene while he was being

16  handcuffed. *Id.*

17         According to Defendants, Officer Arqueza remained in Unit 3 East after the

18  altercation with Plaintiff. He spoke with other correctional staff, then resumed supervising

19  the unit, filling out his incident report, and conducting other routine correctional officer

20  duties. Mueller Decl., Ex. B, Vol. 3 at 20:05:55. Officer Arqueza submitted his incident

21  report later that evening at approximately 10:06 p.m. Trela Decl., Ex. F. Consistent with

22  MCF procedures, there is no evidence that Officer Arqueza had any further interactions

23  with Plaintiff on April 30, 2018, as he did not accompany Plaintiff to the Intake Unit and

24  did not work in Unit 3 West on that date. Mueller Decl. ¶¶ 8, 13. According to Defendant,

25  Officer Arqueza's job duties would have required that he remain in Unit 3 East to

26  supervise the inmates there. Mueller Decl. ¶ 20. When Officer Arqueza ended his shift, he

27  was not scheduled to work (and did not work) at MCF from April 30 through May 3, 2018;

28                                              7

he was off-duty at MCF from May 9-21, 2018.  Mueller Decl. ¶¶ 13-14.

### B.  Medical Treatment and Housing Conditions

According to Plaintiff, Officer Arqueza, his partner, and other officers denied Plaintiff medical care "without immediate doctor's attention for injuries inflicted to his wrist, back, neck, and legs, upon [Plaintiff]'s repeated request, and disabled the emergency intercom audio monitoring system in holding tank to prevent [Plaintiff] from seeking help from staff or medical.  Dkt. No. 23 at 5, ¶ 5.  Plaintiff states that he was handcuffed and isolated in an unsanitary holding cell covered with defecation and urine, barefooted, in freezing climate conditions for many hours."  *Id.*  Plaintiff states that Officer Arqueza then had him transferred to Unit 3 West, a "worser condition of confinement and assigned to a cell covered with defecation, urine, no mattress or clean linen, with a malfunctioned toilet and sink, and denied cleaning supplies and equipment."  *Id.* at ¶ 6.

According to Defendant, Officers Laperruque and Rocha walked Plaintiff down the hallway, out of Unit 3 East to the elevator.  Mueller Decl., Ex. B, Vol. 4 (hallway video).  They brought Plaintiff down an elevator to the ground floor Intake Unit.  *Id.*, Vol. 5 at 20:05:40 (elevator video).  At approximately 8:06 p.m., Officers Laperruque and Rocha escorted Plaintiff into a cell in the Intake Unit and secured him alone in the cell.  *Id.*, Vol. 7 at 20:06:14.  At approximately 8:11 p.m., Plaintiff spoke with Officer Ramirez through the cell window for about a minute.  *Id.* at 20:11:05; *see also* Trela Decl., Ex. J.  Officer Ramirez left Plaintiff's cell and promptly summoned medical staff.  *Id.*

At 8:14 p.m., a nurse arrived; she spoke with Plaintiff through the doorway for a moment then entered his cell at about 8:15 p.m.  Mueller Decl., Ex. B, Vol. 7 at 20:15:21.  She conducted a medical exam, then departed the cell.  *Id.* at 20:16:41.  The nurse subsequently reported that Plaintiff was medically cleared and did not sustain any injuries.  Trela Decl., Ex. F at 2; Dkt. No. 71-2 at 29.

Later that evening at approximately 10:44 p.m., Plaintiff was re-housed to Unit 3 West, cell 03.  Trela Decl., Ex. A.  According to Defendant, this rehousing decision was

made by the classification unit within MCF, not Officer Arqueza who lacked authority to make housing decisions.  Mueller Decl. ¶¶ 4-5.  Unit 3 West was the only other unit that could house an inmate in administrative segregation.  *Id.* at ¶ 3.

On May 1, 2018, Plaintiff submitted two requests for medical services (dated April 30, 2018, and May 1, 2018).[5]  Trela Decl., Exs. L & M.  Plaintiff claimed that his wrist was numb, he had "scratches and scrapes on both hands," and that his left knee and left side of chest were bruised causing pain when walking, and that his lower back had a "punching pain."  *Id.*  Plaintiff stated that he had "informed [the] intake nurse multiple times" of his injuries, indicating that he had spoken with a nurse on April 30, 2018.  *Id.*  The same day, Plaintiff was seen by a nurse to whom he reiterated his complaints of pain in his left knee, lower back, and tingling on both wrists.  Trela Decl., Ex. O; Dkt. No. 69, Ex. 5.  The nurse observed that Plaintiff had a "steady gait" and after examining him, noted only a rash on his left thumb and a "<1 mm" cut on Plaintiff's right back, with no bleeding and no inflammation.  *Id.*  Nevertheless, because Plaintiff was complaining of pain, the nurse ordered Tylenol for Plaintiff for the next 5 days.  *Id.*; Trela Decl, Ex. P; Dkt. No. 69, Ex. 6.

Plaintiff next requested medical services more than two weeks later, in a request dated May 17, 2018, and received May 20, 2018, stating it was his "third request" for injuries he allegedly sustained on April 30, 2018.  Trela Decl., Ex. N; Dkt. No. 69 at 4.  Plaintiff complained of difficulty walking, left knee pain, lower back pain, and one wrist numbness.  *Id.*  When a nurse came to examine him on May 21, 2018, the day after Correctional Health received the request, Plaintiff refused to meet with the nurse.  The nurse reported that Plaintiff yelled obscenities and told the nurse to "fuck off" and get away from his door," so the nurse was unable to provide a medical evaluation.  Trela

---

[5] In an abundance of caution, Defendant filed a redacted version of their summary judgment to protect Plaintiff's private medical information.  Dkt. No. 69.  Because Plaintiff's claims include allegations regarding his injuries and treatment therefore, the Court finds that Plaintiff has waived his right to privacy in this regard.

Decl., Ex. Q; Dkt. No. 69, Ex. 7.

### C.   Disciplinary Action

According to Plaintiff, Officer Arqueza "presented [Plaintiff] with false disciplinary charges, authorized by his supervisor[] without a hearing or reasons for disciplinary actions to restrict [Plaintiff]'s privileges, access to the courts, counsel, and family to prevent [Plaintiff] from seeking outside help and or expose misconduct, and from maintaining his personal hygiene."  Dkt. No. 23 at 5, ¶ 8.

According to Defendant, on May 5, 2018, Sgt. Mueller, as the Disciplinary Review Officer, reviewed Officer Arqueza's incident report and viewed the relevant MCF surveillance camera footage.  Mueller Decl. ¶ 12.  Sgt. Mueller concluded that Plaintiff was guilty of minor jail rule violations and ordered him to serve a minor discipline.  *Id.* Sgt. Mueller placed Plaintiff on a 23-hour lock-down starting on May 6, 2018, and revoked Plaintiffs phone privileges for no more than three days, beginning on May 7, 2018.  *Id.* Under San Mateo County Sheriff's Office policy, a minor rules violation is not entitled to a hearing and must be contested through the inmate grievance procedures.  *Id.* at ¶ 10.

The San Mateo County Sheriff's Office subsequently conducted a Use of Force Investigation into the incident.  On June 6, 2018, Sgt. Mueller again reviewed Officer Arqueza's incident report and the MCF surveillance camera footage of the incident, which had been preserved for this purpose, as well as Officer Arqueza's use of force history.  He concluded that the use of force was within policy.  Mueller Decl. ¶ 16, Ex. A at 4.  All this information was also reviewed by the Bureau Commander, who agreed that the use of force was appropriate and that no further investigation was required.  *Id.*  The Report was further separately reviewed by the Division Commander, the Professional Standards Division, and the Assistant Sheriff, all of whom agreed that the use of force was appropriate and no further investigation was required.  *Id.*

### D.   Plaintiff's Claims

Liberally construing Plaintiff's allegations, the Court found the SAC stated

1
2
3

cognizable claims for excessive force, deliberate indifference to serious medical needs and unsanitary conditions, as well as a due process claim for disciplinary action against Defendant Arqueza.  Dkt. No. 52.

4
5
6
7
8
9
10
11
12
13
14

Based on Plaintiff's allegation that he was pretrial detainee at the time, the Court found his claims were cognizable under the Fourteenth Amendment.  Dkt. No. 36 at 2; Dkt. No. 34 at 4.  However, Defendant has submitted undisputed evidence showing otherwise.  Plaintiff was found guilty on June 14, 2017, and sentenced on July 20, 2018. *See supra* at 3.  Therefore, at the time of the underlying events in April and May 2018, Plaintiff was convicted but not yet sentenced.  A prisoner who has been convicted but not yet sentenced should be treated as a sentenced prisoner, rather than a pretrial detainee. *Resnick v. Hayes*, 213 F.3d 443, 447-48 (9th Cir. 2000).  Accordingly, Plaintiff's claims involving excessive force, deliberate indifference to serious medical needs, and unsanitary conditions must be evaluated under the Eighth Amendment rather than the Fourteenth Amendment.

15

## II.   **Summary Judgment**

16
17
18
19
20
21
22
23
24
25
26

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

27

Generally, the moving party bears the initial burden of identifying those portions of

28

the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted). "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corporation Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631. It is not the task of the district court to scour the record

in search of a genuine issue of triable fact.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment.  *Id.*  If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party.  *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).  The court's obligation to view evidence in the light most favorable to the non-movant does not require it to ignore undisputed evidence produced by the movant. *L.F. v. Lake Washington School District*, 947 F.3d 621, 625 (9th Cir. 2020).

Courts "may not simply accept what may be self-serving account by the police officer," especially in light of contrary evidence.  *Zion v. County of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994); *see id.* (finding summary judgment inappropriate when officer's testimony that a knife-wielding suspect was trying to get up after being shot at 18 times, with 9 of those shots at close range while the suspect was lying on the ground, was contradicted by the video which did not show the suspect trying to get up).  "When opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380-83 (2007) (police officer entitled to summary judgment based on qualified immunity in light of video evidence capturing plaintiff's reckless driving in attempting to evade capture which utterly discredits plaintiff's claim that there was little or no actual threat to innocent bystanders); *see Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 779 (2020) (in ERISA case where the issue was whether plaintiff had actual knowledge of an alleged fiduciary breach, the court indicated that plaintiff's denial of knowledge could be discredited at summary judgment stage if it was blatantly contradicted by electronic records showing plaintiff viewed a website containing relevant disclosures of investment decisions); *cf. Hughes v. Rodriguez*, 31 F.4th 1211, 1219 (9th Cir. 2022) (district court erred in disregarding all of

13

1  plaintiff's testimony where bodycam footage of arrest blatantly contradicted some but not

2  all of the testimony; video did not depict whether plaintiff was punched <u>after</u> he was

3  handcuffed, and panel majority found audio of the arrest was also unclear as to the

4  sequence).

5      **A.**    <u>**Excessive Force**</u>

6         Plaintiff claims he was "repeatedly beaten and battered" by Officer Arqueza, who

7  also "assaulted and threw [Plaintiff] onto the ground," placed his body weight and knees

8  onto Plaintiff's head, back, legs, and arms, and applied handcuffs "extremely tight beyond

9  reasonableness." *See supra* at 3-4.

10         A prisoner has the right to be free from cruel and unusual punishment, including

11  physical abuse by guards.  Whenever prison officials stand accused of using excessive

12  physical force in violation of the Eighth Amendment, the core judicial determination is

13  whether force was applied in a good-faith effort to maintain or restore discipline, or was

14  applied maliciously and sadistically to cause harm.  *Hudson v. McMillian*, 503 U.S. 1, 6

15  (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 317 (1986)).  In making this determination,

16  a court may evaluate the need for application of force; the relationship between that need

17  and the amount of force used; the extent of any injury inflicted; the threat reasonably

18  perceived by the responsible officials; and any efforts made to temper the severity of a

19  forceful response.  *See Hudson*, 503 U.S. at 7; *see also Spain v. Procunier*, 600 F.2d 189,

20  195 (9th Cir. 1979) (guards may use force only in proportion to need in each situation).

21         The evidence presented does not show a genuine dispute as to any material fact

22  relating to Plaintiff's claim of excessive force against Officer Arqueza.  Defendant

23  submitted as evidence Officer Arqueza's incident report and the video footage of the

24  incident.  *See supra* at 4-7.  This evidence shows that Plaintiff emerged from his cell to

25  confront Officer Arqueza about leaving his door ajar, and then walking away.  *Id.*  Plaintiff

26  is clearly much larger than Officer Arqueza and twice makes aggressive motions against

27  him.  *Id.*  Only after Plaintiff failed to comply with his orders to "lock down" and "cuff up"

28

United States District Court
Northern District of California

14

did Officer Arqueza act to gain control of Plaintiff by attempting to grab his arm; when Plaintiff evaded his grab, Officer Arqueza caught Plaintiff's shirt instead. *Id.* It took two officers to gain control over Plaintiff and bring him down to the ground, then handcuff him. *Id.* Contrary to Plaintiff's allegations, the video footage clearly shows that Officer Arqueza did not beat or batter Plaintiff during this incident, nor did he assault Plaintiff and throw him down to the ground. Although the footage shows that Officer Arqueza placed one knee on Plaintiff's back, he did so for a few seconds to restrain Plaintiff while he placed handcuffs on him. The pressure applied was clearly only in proportion to the need of the situation. *See Procunier,* 600 F.2d at 195. Accordingly, the Court should not accept Plaintiff's self-serving account of the incident which no reasonable jury could believe in light of this contrary evidence. *Zion*, 874 F.3d at 1076.

Defendant also asserts that "the absence of serious injury," while not dispositive, is still relevant when evaluating excessive force under the Eighth Amendment. Dkt. No. 71 at 21, citing *Hudson*, 503 U.S. at 2. Defendant is correct in that the extent of injury suffered by an inmate is one factor that may suggest whether the use of force could possibly have been thought necessary in a particular situation. *Hudson*, 503 U.S. at 7. The extent of injury may also provide some indication of the amount of force applied. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Here, the evidence shows that the nurse noted no injuries. Plaintiff's injuries, if any, were no more than *de minimis* and weigh heavily towards the conclusion that the degree of force used was *de minimis* and thus not actionable under *Hudson*.

With regard to Plaintiff's claim that he was overly tightly handcuffed, as discussed above, the evidence submitted by Defendant does not indicate that Plaintiff suffered any injuries from this incident, or at most, they were *de minimis*. Furthermore, after he was handcuffed, Plaintiff did not appear to be in distress or struggling against any apparent tightness in his handcuffs. *See supra* at 7. Plaintiff was brought back to his feet without difficulty and appeared calm as he was escorted from the unit rather than in pain or

discomfort. *Id.* Moreover, none of the subsequent video footage of Plaintiff being escorted into an elevator and to a holding cell shows him in distress or complaining to officers about his handcuffs being too tight. Mueller Decl., Ex. B, Vols. 2-7. Lastly, as discussed above, the medical examination conducted within fifteen minutes of the incident showed no injuries, such as cuts and bruising, consistent with Plaintiff's allegation regarding tight handcuffs. *Id.* at 15.

Based on the evidence submitted, the *Hudson* factors indicate that Officer Arqueza applied force in a good-faith effort to maintain or restore discipline: the need and the amount of force used was reasonable as Plaintiff failed to comply to a direct order and was resisting throughout the incident; Officer Arqueza reasonably perceived that Plaintiff, in resisting, posed a threat to them since he was a much larger man; and Officer Arqueza only used force necessary to control Plaintiff, and stopped applying force once Plaintiff was handcuffed and subdued. *Id.* Accordingly, Defendant has met his initial burden of demonstrating the absence of a genuine issue of material fact with respect to the excessive force claim against him. *See Celotex Corp.*, 477 U.S. at 323.

The burden then shifts to Plaintiff to designate specific facts showing that there is a genuine issue for trial. *Id.* at 324. He must do so by going "beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admission on file." *Id.* Plaintiff has failed to meet this burden as he has filed no opposition in response. Nor do the allegations in Plaintiff's SAC stand up to the undisputed evidence submitted by Defendant.

Based on the evidence presented, Defendant has shown that there is no genuine issue of material fact with respect to Plaintiff's excessive force claim. *Id.* at 323. Having filed no opposition, Plaintiff has failed to point to specific facts showing that there is a genuine issue for trial, *id*. at 324, or identify with reasonable particularity the evidence that precludes summary judgment, *Keenan*, 91 F.3d at 1279. Accordingly, Defendant is entitled to judgment as a matter of law. *Id*.; *Celotex Corp*., 477 U.S. at 323.

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.    Deliberate Indifference to Serious Medical Needs

Plaintiff claims that Officer Arqueza denied him medical care for injuries inflicted to his wrist, back, neck, and legs despite his repeated requests, and that they disabled the emergency intercom audio monitoring system in the holding tank to prevent him from seeking help from medical staff.  *See supra* at 8.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

With regard to the first prong, a "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  *Id*.  With regard to the second prong, a prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  *Id.* at 837.  The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference.  *Id*.  If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.  *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).  In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm.  *See McGuckin*, 974 F.2d at 1060; *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

Defendant asserts this claim fails because Plaintiff cannot show serious medical needs or deliberate indifference by Officer Arqueza.  Dkt. No. 71 at 24-26.  Defendant

asserts that the medical records undermine the basis of Plaintiff's claims and demonstrate that his narrative is false. *Id.* at 25. Defendant also asserts that Plaintiff cannot prove Officer Arqueza had a "culpable state of mind" because there is no evidence that he had any way of knowing about Plaintiff's medical needs, even if such needs had actually existed; the video evidence and Officer Arqueza's incident report show otherwise. *Id.* at 25-26.

The evidence presented does not show a genuine dispute as to any material fact relating to Plaintiff's claim of deliberate indifference to serious medical needs against Officer Arqueza. With regard to the first element, the undisputed evidence shows that Plaintiff had no serious medical needs which, if left untreated, could result in further significant injury or the "unnecessary and wanton infliction of pain." *Farmer*, 511 U.S. at 834. Within 15 minutes of the incident, Plaintiff was examined by a nurse who noted no injuries. *See supra* at 8. When Plaintiff was seen by a nurse two days later, she observed that Plaintiff had a "steady gait," a rash on his left thumb, and a tiny cut on his right back with no bleeding or inflammation. *Id.* at 9. Lastly, though Plaintiff requested to see a nurse two weeks later, he refused to meet with the nurse when she came to examine him. *Id.* This evidence does not support Plaintiff's claim that he was denied treatment or prevented from seeking help for his alleged injuries following the incident. Nor is there any evidence that Plaintiff did suffer and later continued to suffer from any serious medical condition for which he was denied treatment.

With regard to the second prong, there is no evidence that Officer Arqueza denied Plaintiff medical care for any injuries that were inflicted during the incident as Plaintiff claims. First of all, Officer Arqueza's incident report does not indicate that he was aware Plaintiff suffered any injuries during their altercation; rather, the report notes that Plaintiff was examined by a nurse who medically cleared Plaintiff and noted no injuries. Trela Decl., Ex. F at 2; Dkt. No. 71-2 at 29. Second, the video footage shows that Plaintiff had no trouble getting to his feet after he had been handcuffed and subdued. Mueller Decl.,

18

Ex. B, Vol. 1 at 20:05:05.  The video footage does not show that Plaintiff was in pain or any distress which was brought to Officer Arqueza's attention.  *Id.*  Furthermore, Plaintiff was escorted from the unit to a holding cell by other officers while Officer Arqueza remained in Unit 3 East.  *Id.*  There is no indication that Plaintiff had any trouble walking or was in any pain as he walked to the holding cell.  *Id.*  Even if it were true that Plaintiff needed medical treatment, there is no evidence that Officer Arqueza knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps to abate it.

The burden then shifts to Plaintiff to designate specific facts showing that there is a genuine issue for trial.  *Celotex Corp.*, 477 U.S. at 324.  Plaintiff has failed to do so, having filed no opposition in response.  Nor do the allegations in Plaintiff's SAC standup to the undisputed evidence submitted by Defendant.

Based on the evidence presented, Defendant has shown that there is no genuine issue of material fact with respect to Plaintiff's deliberate indifference to serious medical needs claim.  *Id.* at 323.  Having filed no opposition, Plaintiff has failed to point to specific facts showing that there is a genuine issue for trial, *id.* at 324, or identify with reasonable particularity the evidence that precludes summary judgment, *Keenan*, 91 F.3d at 1279.  Accordingly, Defendant is entitled to judgment as a matter of law.  *Id.*; *Celotex Corp.*, 477 U.S. at 323.

C.    **Unsanitary Conditions**

Plaintiff alleges that Officer Arqueza and his partner transferred him "barefooted into a holding tank" out of view of cameras and threated him with violence."  *See supra* at 7.  Plaintiff also alleges that Officer Arqueza was responsible for transferring him to Unit 3 West, to a cell with "worser condition of confinement… covered with defecation, urine, no mattress or clean linen, with a malfunctioned toilet and sink, and denied cleaning supplies and equipment."  *Id.* at 8.

The Court first notes that the evidence submitted by Defendants clearly contradicts

some of Plaintiff's allegations.  First of all, the video footage shows Plaintiff was never "barefooted" during or after this incident and that Officer Arqueza did not escort Plaintiff to the holding cell; although his slippers came off at one point, Plaintiff was clearly wearing socks.  Furthermore, Plaintiff's escort from Unit 3 East to the holding cell was captured on various cameras throughout, such that his allegation that he was taken out of view of cameras and threatened by Officer Arqueza and his partner is contradicted by the evidence.  Accordingly, these allegations are patently false.  What remains is Plaintiff's allegation that Officer Arqueza intentionally moved him to an unsanitary cell in Unit 3 West.

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.  *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Amendment imposes duties on prison officials, who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety.  *See Farmer*, 511 U.S. at 832; *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 199-200 (1989); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).  A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, *id.* (citing *Wilson*, 501 U.S. at 297).

The requisite state of mind to establish an Eighth Amendment violation depends on the nature of the claim.  In prison-conditions cases, the necessary state of mind is one of "deliberate indifference."  *See, e.g., Farmer*, 511 U.S. at 834 (inmate safety); *Wilson*, 501 U.S. at 302-03 (general conditions of confinement); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (inmate health).  A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard

for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety.  *See Farmer*, 511 U.S. at 837.  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  *See id.*  An Eighth Amendment claimant need not show, however, that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.  *See id.* at 842.

Defendant asserts this claim for unsanitary conditions fails because Plaintiff was not subjected to unsanitary conditions sufficient to give rise to a constitutional violation while temporarily detained in the intake unit, nor was he subjected to unconstitutional conditions in Unit 3 West, and Officer Arqueza was not aware of any unsanitary conditions in either cell.[6]  Dkt. No. 71 at 27-31.

The evidence presented does not show a genuine dispute as to any material fact relating to Plaintiff's claim of unsanitary conditions against Officer Arqueza.  Even if the Court assumes that Plaintiff was subjected to unsanitary conditions, Plaintiff cannot satisfy the second prong, *i.e.*, Officer Arqueza knew of and disregarded an excessive risk to Plaintiff's health or safety.  *See Farmer*, 511 U.S. at 837.  Contrary to Plaintiff's allegation, the evidence submitted by Defendant shows that Officer Arqueza was not responsible for transferring Plaintiff to Unit 3 West, much less specifically one with unsanitary conditions.  Rather, the evidence shows that Officer Arqueza remained in Unit 3 East for the rest of his shift and had no further interactions with Plaintiff that day.  *See supra* at 7.  Furthermore, the evidence shows that Officer Arqueza did not have the

---

[6] Defendant asserts that Plaintiff failed to exhaust administrative remedies for aspects of his claim about Unit 3 West cell conditions.  *Id.* at 29.  However, Defendant also asserts that the claim fails on the merits.  *Id.* at 29-30.  The Court agrees.  Even if Plaintiff were able to cure this deficiency by filing an amended complaint after exhaustion is completed, it would be futile because the evidence clearly shows that Officer Arqueza had no knowledge that Plaintiff was subjected to unconstitutional conditions after he was escorted out of Unit 3 East as discussed herein.

21

authority to make housing decisions, and that it was made by the classification unit within MCF.  *Id.* at 8-9.  In response, Plaintiff has failed to designate specific facts showing that there is a genuine issue for trial, having filed no opposition.  *See Celotex Corp.*, 477 U.S. at 324.  Nor do the allegations in Plaintiff's SAC standup to the undisputed evidence submitted by Defendant.

Based on the evidence presented, Defendant has shown that there is no genuine issue of material fact with respect to Plaintiff's claim regarding unsanitary conditions.  *Id.* at 323.  Having filed no opposition, Plaintiff has failed to point to specific facts showing that there is a genuine issue for trial, *id.* at 324, or identify with reasonable particularity the evidence that precludes summary judgment, *Keenan*, 91 F.3d at 1279.  Accordingly, Defendant is entitled to judgment as a matter of law.  *Id.*; *Celotex Corp.*, 477 U.S. at 323.

## D.   **Due Process**

Lastly, Plaintiff claims that "Officer Arqueza presented [Plaintiff] with false disciplinary charges, authorized by his supervisor[] without a hearing or reasons for disciplinary actions to restrict [his] privileges, access to the courts, counsel, and family to prevent [Plaintiff] from seeking outside help and or expose misconduct, and from maintaining his personal hygiene."  *See supra* at 10.

Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system.  *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Thus, although prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply, where serious rules violations are alleged and the sanctions to be applied implicate state statutes or regulations which narrowly restrict the power of prison officials to impose the sanctions and the sanctions are severe, the Due Process Clause requires certain minimum procedural protections.  *See id.* at 556-57, 571-72 n.19.  The placement of a California prisoner in isolation or segregation, or the assessment of good-time credits against him, as a result of

disciplinary proceedings, for example, is subject to *Wolff's* procedural protections[7] if (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, and (2) the liberty in question is one of "real substance." *See Sandin v. Conner*, 515 U.S. 472, 477-87 (1995).

Defendant asserts this due process claim fails because the discipline was warranted, it was minor, and not authorized by Officer Arqueza. Dkt. No. 71 at 32-34. Defendant asserts that the video evidence confirms that the disciplinary charges were not "false" as Plaintiff claims. *Id.* at 32. Furthermore, Officer Arqueza's report states that Plaintiff "would not follow commands," "approached [Officer Arqueza] in a potentially assaultive manner," and "refused to lock down and refused to cuff up." Trela Decl., Ex. F at 1. Defendant asserts that undisputed video evidence and subsequent investigation confirms this account. Dkt. No. 71 at 32, citing Mueller Decl. ¶¶ 7, 12, Ex. A & Ex. B, Vol. 1 at 20:05:53; Trela Decl., Ex. F. Defendant also asserts that Plaintiff received all the due process he was due for this "minor" disciplinary charge, including filing a grievance to contest the discipline, and that he was only subject to temporary loss of privileges. Dkt. No. 71 at 32-33. Lastly, Defendant submit evidence that Sgt. Mueller, acting as the Disciplinary Review Officer, was the one who authorized and ordered the discipline, not Officer Arqueza. *Id.* at 34.

The evidence presented does not show a genuine dispute as to any material fact relating to Plaintiff's due process claim against Officer Arqueza. First of all, the evidence shows that the discipline involved was not a serious rules violation nor did it involve a liberty of "real substance," triggering due process protections under *Wolff*. The temporary

---

[7] *Wolff* established five procedural requirements: (1) written notice of the charges sufficient to enable the prisoner to prepare a defense; (2) at least 24 hours to prepare before the disciplinary hearing; (3) written statement by the factfinder that includes the evidence and reason for the action; (4) opportunity to call witnesses and present documentary evidence when permitting him to do so will not be unduly hazardous; and (5) the aid of an inmate or staff if necessary under the circumstances. 418 U.S. at 564-570.

loss of privileges which Plaintiff received does not constitute a deprivation of constitutional proportions under *Sandin*, 515 U.S. at 477-87. Furthermore, the undisputed evidence shows that the discipline was not "false" as Plaintiff claims. Rather, the evidence shows that Plaintiff was not compliant with Officer Arqueza's commands and resisted until he was handcuffed. *See supra* at 14-15. Accordingly, Plaintiff's allegation that he "did not resist, nor pose a threat, and complaint" is patently false. Furthermore, after a Use of Force Investigation was conducted into the incident, Sgt. Mueller, the Bureau Commander, the Division Commander, the Professional Standards Division, and the Assistant Sheriff all agreed that the use of force was appropriate. *Id.* at 10. Lastly, contrary to Plaintiff's claim, the undisputed evidence shows that Officer Arqueza did not issue the discipline. Rather, Officer Arqueza's superior officer, Sgt. Mueller, decided that minor discipline was appropriate after reviewing the incident report and viewing the camera footage. *See supra* at 10. There is no evidence that Officer Arqueza was involved in that decision other than Plaintiff's conclusory allegation. In response to this evidence, Plaintiff has failed to designate specific facts showing that there is a genuine issue for trial having filed no opposition. *Celotex Corp.*, 477 U.S. at 324. Nor do the allegations in Plaintiff's SAC standup to the undisputed evidence submitted by Defendant.

Based on the evidence presented, Defendant has shown that there is no genuine issue of material fact with respect to Plaintiff's due process claim. *Id.* at 323. Having filed no opposition, Plaintiff has failed to point to specific facts showing that there is a genuine issue for trial, *id.* at 324, or identify with reasonable particularity the evidence that precludes summary judgment, *Keenan*, 91 F.3d at 1279. Accordingly, Defendant is entitled to judgment as a matter of law. *Id.*; *Celotex Corp.*, 477 U.S. at 323.

### III.   <u>Plaintiff's Motion to Add Defendants</u>

While Defendant's summary judgment motion was pending, Plaintiff filed a motion to add Defendants to this action. Dkt. No. 97. The proposed new defendants were allegedly officers on duty at the time of the incident who failed to intervene and stop

Officer Arqueza from assaulting him on April 30, 2018; the list includes Officer Rocha. *Id.* at 3-4. Plaintiff also claims that the San Mateo County Sheriff's Office failed to adequately train the officers involved and to institute customs or practices that could have protected him from excessive force. *Id.* at 5. Plaintiff further claims that these officers did not attempt to recover any evidence to suggest that Officer Arqueza did injure Plaintiff after he repeatedly informed them of his injuries. *Id.* Defendant moved to stay this motion pending disposition of their summary judgment motion. Dkt. No. 102. The Court granted the motion to stay. Dkt. No. 103. In light of this order granting Defendant's motion for summary judgment, the Court lifts the stay on Plaintiff's motion. Furthermore, the Court finds further briefing is unnecessary to decide the motion.

Plaintiff's motion is essentially a request to amend the SAC to add new claims and defendants. A party may add claims and/or defendants only with the consent of the opposing party or leave of court; the court should freely give leave when justice so requires. Fed. R. Civ. P. 15(a)(2). Leave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay. *See Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994); *Roberts v. Arizona Bd. of Regents*, 661 F.2d 796, 798 (9th Cir. 1981). A district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously filed an amended complaint. *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

The Court finds justice does not require the amendment of Plaintiff's proposed new claims and defendants at this stage of the proceedings. First of all, an amendment would constitute an exercise in futility. The undisputed evidence shows that Officer Arqueza did not apply excessive force during the incident at issue, but that the force used was appropriate. *See supra* at 15-16. As such, there is no basis for a failure to protect claim against these new Defendants where there was no reason to intervene in order to protect

United States District Court
Northern District of California

United States District Court
Northern District of California

Plaintiff.  Furthermore, because Officer Arqueza's actions were appropriate, there is no basis for a claim against the Sheriff's Office for an alleged failure to adequately train him. Seconly, the Court finds Plaintiff's motion is made in bad faith.  The undisputed evidence submitted by Defendant shows that several if not all of Plaintiff's allegations are patently false.  Plaintiff's attempts to delay this matter by seeking additional evidence which does not exist and ultimately failing to file an opposition indicates that he was also aware that his claims were baseless and unsupported.  Accordingly, Plaintiff's motion to add new claims and defendants is DENIED as futile and sought in bad faith.  *See Janicki Logging Co.*, 42 F.3d at 566.

## CONCLUSION

For the reasons stated above, Defendant Terry Arqueza's motion for summary judgment, Dkt. No. 71, is **GRANTED**.[8]  The Eighth Amendment claims and due process claim against Ms. Arqueza as the successor of Officer Arqueza are **DISMISSED** with prejudice.

Plaintiff's motion to add new claims and defendants is **DENIED**.  Dkt. No. 97.

This order terminates Docket Nos. 71 and 97.

**IT IS SO ORDERED.**

Dated:  __June 26, 2023_____

BETH LABSON FREEMAN
United States District Judge

Order Granting MSJ; Denying M. to Add Defs.
PRO-SE\BLF\CR.18\03972Saddozai_grant-msj&deny.am

---

[8] Because the Court finds that no constitutional violation occurred, it is not necessary to reach Defendants' qualified immunity arguments for each of the claims against Officer Arqueza.